■ MELVIN STEVENS, Respondent, v. CENTRAL SCHOOL DISTRICT No. 1 OF THE TOWN OF RAMAPO, ROCKLAND COUNTY, Appellant, et al., Defendant.— In a negligence action to recover damages for personal injuries sustained by plaintiff while playing basketball in a school building owned by defendant Central School District No. 1 of the Town of Ramapo, said defendant appeals from so much of a judgment of the Supreme Court, Rockland County, entered October 9, 1964, as is in favor of plaintiff against it, upon a jury verdict. Judgment affirmed, insofar as appealed from, with costs. Plaintiff was injured while participating in a game of basketball in the gymnasium in the Sloatsburg Elementary School building, which was owned and controlled by appellant, a school district. At the time of the accident plaintiff was 30 years old and the building was being used as a community recreation center. The Sloatsburg Recreation Commission, which had been established by the Board of Trustees of the Village of Sloatsburg, was empowered to provide, conduct, sponsor and supervise recreational and athletic activities for the residents of Sloatsburg. One of the projects sponsored and conducted by the commission was "basketball for adults" and, at the time of the accident, the commission, with appellant's express approval and permission, had engaged the gymnasium for the playing of basketball. The combination cafeteria, assembly and gymnasium, where the basketball game was being played, had a stage at one end and a wall in which there were two doors at the other end. The wall was four feet, three inches from the backboard to which the basket was attached and approximately two feet from the "end line" of the court. Each of the doors had an 8 inch by 12 inch glass panel which was constructed of one-eighth inch double-thick window sheet glass. One of the doors was almost directly behind the basket. Plaintiff, while running along the court at considerable speed and "going up" for a shot at the basket, was carried by his momentum beyond the "end line" and into the door behind the basket, causing his arm, with which he tried to brace his body, to go through the pane of glass. The gravamen of plaintiff's complaint is that the basketball court was improperly constructed and designed "so that the wall of the gymnasium was dangerously close to one end of the basketball court and to the backboard at that end" and that a "glass window in the door immediately behind and too close to said backboard" was "constructed and maintained" by appellant without any warning that the "glass in said window was ordinary glass, not shatterproof, and not reinforced". After a jury trial, a verdict was returned in plaintiff's favor against appellant in the sum of $15,000 and in favor of the codefendant, the Village of Sloatsburg, against plaintiff. No appeal has been taken by plaintiff. Appellant contends that (1) plaintiff was a licensee and not an invitee and cannot recover for the alleged defect in design or for the condition of the premises, (2) plaintiff assumed the risk of injury by playing basketball with full knowledge of the danger and (3) the evidence failed to establish any negligence on appellant's part. In New York, the liability of school districts or school boards is determined by the same rules and principles which govern the liability of private landowners, under the same or similar circumstances, for their own negligence resulting in injuries to pupils or other persons. Moreover, the measure of the duty of care required of appellant is dependent upon the status of plaintiff as an invitee, licensee or trespasser (*Seitz* v. *Board of Educ.*, 284 App. Div. 1022). In our opinion, the status of plaintiff was that of an *invitee* to whom appellant owed the duty of reasonable care. Appellant had granted permission to the Sloatsburg Recreation Commission to use the school premises for basketball games sponsored by the commission and had invited the members of the public (including plaintiff)

to avail themselves of the building's recreational facilities. "By permitting the community center to use the gymnasium and apparatus for a community use, there was an invitation to those who availed themselves of the privilege to come upon the premises and use the apparatus. Plaintiff was on the premises as an invitee, and not as a mere licensee" (*Kelly* v. *Board of Educ.*, 191 App. Div. 251, 253). Moreover, the court charged the jury that plaintiff was an invitee to whom appellant owed a duty to use reasonable care for his protection and safety from danger and injury. No exception was taken and the charge therefore became the law of the case. In support of the contention of assumption of risk, appellant places principal reliance upon *Maltz* v. *Board of Educ.* (32 Misc 2d 492, affd. 282 App. Div. 888). In our opinion, however, the *Maltz* case is distinguishable and not determinative of the issue herein involved. In *Maltz*, the plaintiff was injured when his momentum carried him beyond the basket, causing him to hit against the jamb of an open doorway in a wall which was two feet from the basket. On previous occasions, he had landed in the same direction as at the time of the accident; sometimes he went through the doorway and at other times he came into contact with the wall. It is apparent that in *Maltz* the risks of the court — the door being open and the wall being so close to the end of the court — were risks that were obvious and necessary to the sport as played on that particular court. The plaintiff's prior experience made him aware of the very hazards and dangers of which he complained. He not only knew of the existing conditions but had or should have had an appreciation of the danger produced by the physical conditions existing. In the case at bar, however, we conclude that the issue of assumption of risk was properly submitted to the jury as one of fact and it may not be held as a matter of law that under the evidence here adduced plaintiff assumed the risk of the dangerous condition caused by the use of ordinary window glass or that he had foresight of the consequences sufficient to compel a finding that he had voluntarily assented to incur that risk. "The essential requisite to the invocation of the application of the doctrine of assumption of risk embraces not only a knowledge of the physical defect but includes also an appreciation of the danger produced by the physical condition" (*McEvoy* v. *City of New York*, 266 App. Div. 445, 448). While plaintiff may have assumed certain risks of danger inherent in the playing of basketball on this particular court under the conditions existing at the time of the accident, he did not assume the risk that the glass panel which was in such close proximity to the basket would be of ordinary glass unable to withstand impact. Certainly, he could have reasonably assumed that since the glass was so close to the basket it was, at least, of a type which would resist the pressure of an impact such as may ordinarily occur during the course of a basketball game; and it could be found that he was, therefore, unappreciative of the danger produced by the use of window glass. Similarly, we find that *Scampoli* v. *City of Mount Vernon* (24 A D 2d 503) does not compel a contrary conclusion. In that case, under facts comparable to those in the *Maltz* case, we held that the trial court's determination of the *factual* issues was not against the weight of the evidence. In the case before us, we conclude that the issue of assumption of risk was properly submitted to the jury as a question of fact and their finding, implicit in the verdict, that plaintiff did not assume the risk of his injury was not against the weight of the evidence. Finally, we find without merit appellant's argument that the evidence failed to establish any negligence on its part. There was testimony that there were other types of glass available when the school was constructed which could have been used and which could have prevented the injuries which plaintiff sus-

tained.  In fact, the architect who designed the building testified that the room where the accident occurred was not architecturally designed or constructed for basketball games and that it was poor planning to place a window in a door behind a basketball backboard that was only a few feet from the wall.  In our opinion, the jury could reasonably have concluded that appellant was negligent in failing to use safety or shatterproof glass which was available at the time of the building's construction and subsequent thereto.  Christ, Brennan, Rabin and Hopkins, JJ., concur; Ughetta, Acting P. J., dissents and votes to reverse the judgment, insofar as appealed from, and to dismiss the complaint as against appellant, with the following memorandum:  One who takes part in a sport accepts the risks that inhere in it so far as they are obvious and necessary (*Kimbar* v. *Estis*, 1 N Y 2d 399, 404; *Murphy* v. *Steeplechase Amusement Co.*, 250 N. Y. 479, 482; *Luftig* v. *Steinhorn*, 21 A D 2d 760, affd. 16 N Y 2d 568; *Speigel* v. *Jewish Community Center*, 24 A D 2d 926).  Basketball is a sport which requires those who participate in it to race at maximum speed toward the basket and it is a rare game indeed when players so doing are not carried by their momentum beyond the limits of the court.  The ideal basketball court, therefore, should contain a considerable area beyond the end lines free from obstruction.  Experience teaches, however, that players will and do voluntarily risk the hazards of an inadequate playing area in exchange for the opportunity to participate in the sport (*Scala* v. *City of New York*, 200 Misc. 475, 479).  In the instant case plaintiff, a 30-year-old accountant, was injured while participating in a basketball game at the Sloatsburg Elementary School.  He had played in the gymnasium on at least seven prior occasions.  After intercepting a pass, he raced for his team's basket at top speed, jumped up toward the basket to shoot the ball and was unable to stop himself from hitting the back wall which was two feet from the end line of the court.  His arm went through an 8 inch by 12 inch glass panel contained in a door in the wall.  He testified that as he took the shot he thought he was going to hit the wall which included the door but that he was not aware of the glass in the door.  In my opinion, plaintiff as a matter of law knowingly and voluntarily assumed the risk of injury resulting from the dangerous proximity of the wall to the end line.  In two very similar cases, this court has affirmed judgments for defendants on that theory (*Scampoli* v. *City of Mount Vernon*, 24 A D 2d 503; *Maltz* v. *Board of Educ.*, 32 Misc 2d 492, affd. 282 App. Div. 888).  Where one voluntarily assumes a position of danger, he may not recover for injuries resulting from such danger (*Quist* v. *Bressard Distrs.*, 24 A D 2d 420).  Whether a party has assumed a given risk is generally a question of fact but in a proper case it can be decided as a matter of law (cf. *Kanofsky* v. *Brooklyn Jewish Center*, 241 App. Div. 739, affd. 265 N. Y. 634; *Lutzker* v. *Board of Educ.*, 262 App. Div. 881, affd. 287 N. Y. 822; *Grossgold* v. *Brooklyn Jewish Center*, 279 App. Div. 1025; *McGee* v. *Board of Educ.*, 16 A D 2d 99, 102).  I think this is such a case (cf. *Hoffman* v. *Silbert*, 24 A D 2d 493).  I am also of the opinion that there was a failure of proof as to appellant's alleged negligence in failing to install safety or shatterproof glass.  The architect who designed this combination assembly room, cafeteria and gymnasium for use by children ranging in age from 6 to 12 testified that he had specified double-thick window glass for the doors because he did not know it was contemplated that the room would be used as a basketball court; that, though he was later so notified and backboards were installed when the building was almost completed, he did not think it necessary for any changes to be made in the glass panels; and that, in the fifteen years between completion of the school in 1943 and this accident

in 1958, there had been no accidents involving this glass. The custodian of the school testified that during that period the glass panels in the doors were never broken (cf. *De Salvo* v. *Stanley-Mark-Strand Corp.*, 281 N. Y. 333, 338; *Moore* v. *Board of Educ.*, 22 A. D. 2d 919, 920). Appellant had entrusted the planning of the building to a competent architect who made no provision for the installation of safety or shatterproof glass after learning that basketball would be played in the room. An owner who contracts for the erection of a building is not liable for the omissions of the architect unless he knows or has reasonable grounds to believe that the structure when completed is dangerous or defective (*Haefeli* v. *Woodrich Eng. Co.*, 255 N. Y. 442, 450; cf. *Herman* v. *City of Buffalo*, 214 N. Y. 316, 319; *Burke* v. *Ireland*, 166 N. Y. 305, 313–314). Appellant was justified in relying on the architect for specification of the proper glass to be installed in these doors and, if the installation of sheet glass was imprudent, it was nevertheless not a defect "so glaring and out of the ordinary as to bring home to the contractor that it was doing something which would be likely to cause injury" (*Ryan* v. *Feeney & Sheehan Bldg. Co.*, 239 N. Y. 43, 47). If that intial reliance was misplaced, nothing occurred subsequently and prior to this accident to so indicate. The plans for the building were approved by the State of New York and an inspection of the completed school by a State inspector produced no objection to the glass panels. Fifteen years of continuous use went by without an accident. "No structure is ever so made that it may not be made safer. But as a general rule, when an appliance or machine or structure, not obviously dangerous, has been in daily use for years, and has uniformly proved adequate, safe and convenient, its use may be continued without the imputation of culpable imprudence or carelessness" (*Lafflin* v. *Buffalo & Southwestern R. R. Co.*, 106 N. Y. 136, 141). Finally, even if it be assumed that defendant was negligent in failing to install safety glass, I think that omission was not the proximate cause of this accident although it may have created the specific injuries for which damages are sought and determined the gravity of the consequences (cf. *Rivera* v. *City of New York*, 11 N Y 2d 856, 857).