■ JOHN CLARK, Appellant, v INTERLAKEN OWNERS, INC., Defendant, and ANDEM CONSTRUCTION, INC., Respondent. [770 NYS2d 58]—

Judgment, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered December 20, 2001, on a jury verdict finding the infant plaintiff 75% responsible for his injuries and awarding him $15,667.88, reversed, on the law and in the

exercise of discretion, without costs, and the matter remanded for a new trial.

This is an action to recover damages for personal injuries sustained by plaintiff, a five-year-old child at the time of the injury. Plaintiff's finger was crushed while he was playing on heavy construction equipment belonging to defendant Andem Construction, Inc. (Andem). Andem had been hired by defendant Interlaken Owners, Inc. (Owners), the owner of the apartment complex known as Interlaken Gardens where plaintiff lived with his family, to resurface a garage area in the complex. The equipment, including a trailer that transported the equipment, was stored on the Interlaken Gardens premises during the four-week construction project.

The construction area where the trailer and other equipment were stored was partially roped off by a plastic construction barrel and plastic tape that displayed the word "caution." However, access to the construction area was easily obtainable by simply walking around the barrel or under the tape.

The injury occurred on May 23, 1996, at about 5:30 in the afternoon, after the construction workers had left for the day. Plaintiff and his friend, on their way to a nearby playground, took a detour into the construction site where they found the trailer with its heavy, steel ramps raised in an upright position. When the ramps were raised, they took on the appearance of a ladder. Plaintiff apparently tried to climb the rungs of the ramp, whereupon the ramp, which was either completely unsecured or secured only by small chains, swung down, carrying plaintiff with it, and plaintiff's finger was caught between the ramp and an adjacent piece of equipment.

The jury found that plaintiff was 75% responsible for his injuries, while Andem was 25% responsible. The jury further found that, although Owners was negligent in failing to maintain its property in a reasonably safe condition, its negligence was not a cause of the accident. Plaintiff appealed.

Plaintiff contends, inter alia, that the trial court erred by including instructions on the doctrine of "assumption of risk" in its charge to the jury. The doctrine of assumption of risk provides a defense to a personal injury claim if it is shown that the condition or activity that caused the injury involved an inherent, known and obvious risk that was voluntarily assumed by the plaintiff (*see e.g. Morgan v State of New York*, 90 NY2d 471, 484 [1997]). Awareness of risk "is not to be determined in a vacuum" (*id.* at 486) but, rather, "against the background of the skill and experience of the particular plaintiff" (*id.*). For the doctrine to apply, the plaintiff must have the capacity to

understand and fully appreciate the risk involved. Thus, we have held that the assumption of risk doctrine did not apply to injuries suffered by a six-year-old child who was burned when he climbed over a fence to investigate the defendant's steam hose located near a playground (*Roberts v New York City Hous. Auth.*, 257 AD2d 550 [1999], *lv denied* 93 NY2d 811 [1999]). The doctrine is equally inapplicable in this case, where the danger was even more accessible and the risk at least as unappreciated by this five-year-old plaintiff. Instructing the jury on assumption of risk was, therefore, erroneous as a matter of law.

Defendant correctly points out that plaintiff failed to object to the inclusion of the assumption of risk instruction when it was given and that, therefore, the error was not preserved for review (CPLR 4110-b; *Goldberg v Wirtosko*, 182 AD2d 350 [1992]). However, since we find the error in the charge to be so fundamental as to warrant reversal, we exercise our discretion to review in the interest of justice (*Aragon v A & L Refrig. Corp.*, 209 AD2d 268 [1994]; *Rodriguez v Cato*, 63 AD2d 922, 923 [1978]). In view of our decision on this issue, we need not address plaintiff's remaining contentions. Concur—Rosenberger, Lerner and Marlow, JJ.

Buckley, P.J., and Tom, J., who dissent in a memorandum by Tom, J., as follows: Insofar as the challenge to the instruction was not preserved (CPLR 4110-b, 5501 [a] [3]), and I do not conclude that governing law constrains us to find that the purported error was fundamental, I respectfully dissent and would affirm.

Preliminarily, New York has long disclaimed any per se rule with regard to the age at which a child cannot legally assume a risk and thereby not be responsible for comparative fault for his or her injury. Rather, "[n]o rule of law fixes an arbitrary age at which a particular degree of care may be expected, or furnishes a true presumption which takes the place of evidence, that a child is not chargeable with contributory negligence. Only where the circumstances admit of only one inference may the court decide as a matter of law what inference shall be drawn" (*Camardo v New York State Rys.*, 247 NY 111, 117-118 [1928]). Hence, although "[a] child may be of such tender years that it lacks the experience which would enable it to realize the presence of a threatening danger, and the judgment which would enable it to avoid the danger . . . [a] child's age does not alone determine its capacity to care for itself and to avoid dangers which may threaten" (*id.* at 115-116). Moreover, if conflicting inferences may be drawn regarding the child's ability to understand the dangers posed by his conduct, a factual issue is

presented and that question must be given to the jury. The question whether the child can be legally capable of understanding and assuming the risk is judicially resolvable only if "the only reasonable inference is that the child was incapable of realizing or avoiding the danger of injury" (*id.* at 116). Hence, even four-year-old children are not non sui juris as a matter of law, so that it was a question of fact whether a four-year-old had capacity to exercise care when he tripped in a "clutter[ed]" store (*Tenebruso v Toys "R" Us*, 256 AD2d 1236 [1998]). In the present case, the court properly submitted the charge to the jury for its review, and the jury made its findings on the basis of the evidence.

The majority, though, concludes that as a matter of law, it was error to submit the assumption of risk charge to the jury as to this child when the danger was accessible and the risk unappreciated. Of course, whether this child appreciated the risk is the very matter in dispute, and I cannot assume on the basis of this record that the child was incapable of appreciating the risk. To the contrary, the fact that the child's parents allowed him to play without supervision in the vicinity of the accident site could even suggest their own assessment that he was sufficiently capable of appreciating dangers and risks. The child himself testified that he regularly played in the area with several friends, riding bikes and kicking balls. He indicated that he simply walked around the cones and tape. The mother testified that although he was allowed to play outside with friends, he was not allowed to go far. The evidence in this case creates a factual issue. This is not a case in which any degree of sophisticated knowledge is being required of the child (*cf. Branch v Stehr*, 93 AD2d 849 [1983] [six-year-old not chargeable with knowledge of traffic regulations]). The child was about three weeks shy of his sixth birthday. The location was a garage area about 50 feet away from the Clarks' apartment. The asphalt was dug up and heavy machinery was present. The area across a quadrangle from a playground was obviously a construction site, and was secured by taping that contained the word "caution," barrels and cones. The child was trying to climb a trailer at the site when, trying to access it, he stepped onto a ramp and a pole descended, which crushed his finger and resulted in a bad break. Apparently, the ramp was secured, or should have been secured, by a chain. The contractor's witness testified that the ramps were secured every night by chains. Photos of the work site and equipment were submitted to the jury, which considered expert testimony regarding work site safety. Defendants testified that letters had been sent to residents, presumably including this child's parents, advising them of the construction work.

The jury made findings apportioning liability and found plaintiff child 75% liable. The court submitted the assumption of the risk charge as an aid to deliberations. The charge as given tracks the relevant charges in the Pattern Jury Instructions (PJI3d 2:23, 2:48, 2:55 [2003]), so that the accuracy of the charge does not divide us. Rather, the majority concludes that the giving of the charge was per se error.

For its proposition, the majority cites to our recent decision in *Roberts v New York City Hous. Auth.* (257 AD2d 550 [1999], *lv denied* 93 NY2d 811 [1999]). However, that case explicitly turned on the circumstances presented therein, and was factually distinguishable from the case presently before us. Moreover, *Roberts* cites as its sole authority *Morgan v State of New York* (90 NY2d 471 [1997]), but *Morgan* analyzed risks associated with sports participants, so that it provides little guidance regarding how "obvious" any particular risk is to a child. In *Roberts*, a fire hose used to discharge a hot water system's excess steam was run from a residential building's basement to a lawn behind the building that was adjacent to a playground. Although the lawn had a fence, the fence was easily breached and in fact children regularly played on it, a fact commonly known. In effect, the lawn was a continuation of the concreted playground. No effort was made to secure the hose, no warning signs were posted, the lawn was not otherwise secured, and the injured child had been pushed into the pipe by another child during roughhousing. Although we found that the doctrine of assumption of the risk had no application to that six-year-old child, we explicitly delimited the reach of that ruling by noting that it was based under the factual circumstances of that case. The lawn area was patently innocuous as to any dangers posed to boisterous children: there was no readily observable danger to which a child reasonably would have been alerted.

To take that ruling, applicable to those circumstances, and apply it to the present factual context, overlooks, I believe, the very different circumstances of the cases and the contrast between the sheer absence of obvious warnings in *Roberts* and the manifestation of warnings in the present case that could likely cause a six-year-old to take heed. Under the present circumstances, rather, alternative inferences are possible and a jury question was properly presented. To basically deny these defendants a charge of a child's assumption of the risk comes close to suggesting a strict liability regime for construction site accidents involving trespassing children. The better policy with this case is, I believe, to let the jury decide the extent to which the child could have perceived the possibility of danger, and ei-

ther did or did not take such risks into account when entering construction premises. Since, then, the submission of the charge was not fundamental error, the unpreserved claim was statutorily beyond the scope of review.